## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEGAN JACKSON and SUSANNAH SMITH, on behalf of themselves and all others similarly situated, | Case No. 1:23-CV-10019 |
| | **Honorable Judge Denise J. Casper** |
| Plaintiffs, | |
| v. | |
| SUFFOLK UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

32813564.1

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

SUMMARY OF RELEVANT FACTUAL BACKGROUND ...........................................2

    I.  The Litigation..............................................................................................................2

    II.  Settlement Negotiations .............................................................................................3

SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT ..........................4

    III. The Settlement Class Definition ...............................................................................4

    IV. Settlement Consideration ...........................................................................................5

        A.  Direct Monetary Relief to Settlement Class Members. .................................5

        B.  Non-Monetary Relief and Business Practice Changes ..................................7

        C.  Attorneys' Fees and Expenses, Service Awards, and Cost of Settlement
             Administration .................................................................................................8

        D.  Dismissal and Release of Claims ...................................................................8

        E.  The Proposed Notice Program and Claims Program .....................................8

            1.  Notice Program ......................................................................................8

            2.  Claims Program ...................................................................................10

        F.  Settlement Administration .............................................................................10

ARGUMENT ....................................................................................................................11

    I.  This Court Should Preliminarily Approve the Settlement .................................11

        A.  The Settlement Is Procedurally Fair .............................................................11

            1.  Plaintiffs and Class Counsel have adequately represented
               the interest of the Class .......................................................................11

            2.  The Settlement is the product of arm's length negotiations.................12

        B.  The Settlement is Substantively Fair ...........................................................13

32813564.1

1. The *Grinnell* factors and Rule 23(e)(2)(C)(i) support approval of the settlement ................................................................14

    a.  The costs, risks, and delay of trial and appeal favor the settlement ................14

    b.  The remaining *Grinnell* factors also support approval of the settlement .........16

2. The settlement provides an effective method for distributing relief and treats class members equitably, thereby satisfying Fed. R. Civ. P. 23(e)(2)(C)(ii) and (e)(2)(D) ................................................................17

3. The requested attorneys' fees and other awards are paid separately to ensure that the Settlement Class receives adequate relief ................................18

4. There are no unidentified agreements that impact the adequacy of relief for the Settlement Class ................................................................19

II. This Court Should Conditionally Certify the Proposed Settlement Class. .......................19

    A. The Requirements of Fed. R. Civ. P. 23(a) are Satisfied. ...........................................19

        1. The Settlement Class is so numerous the joinder of individual members is impracticable ................................................................20

        2. There are questions of law and fact common to the settlement class ...................20

        3. Representative Plaintiffs' claims are typical of the claims of the settlement class ................................................................21

        4. The interests of Plaintiffs and Plaintiffs' Co-Counsel are aligned with the interests of the Settlement Class ................................................................21

    B. The Requirements of Fed. R. Civ. P. 23(b)(3) are Satisfied ........................................21

        1. Questions common to all Settlement Class Members predominate over any potential individual questions ................................................................22

        2. A class action is the superior method to fairly and efficiently adjudicate the matter ................................................................22

III. The Notice Plan and Class Notice Should Be Approved. ................................................23

IV. Proposed Schedule ................................................................25

CONCLUSION ................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. 23

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 325 (D. Mass. 2015) .............................................................. 12, 14

*Burns v. Elrod*,
  757 F.2d 151 (7th Cir. 1985)............................................................................... 23

*Connor B. ex rel. Vigurs v. Patrick*,
  272 F.R.D. 288 (D. Mass. 2011) ......................................................................... 12

*Detroit v. Grinnell Corp*,
  495 F.2d 448 (2d Cir. 1974).................................................................... 14, 16, 17

*Hochstadt v. Boston Sci Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) .............................................................. 17, 20

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)......................................................................... 22

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003)............................................................................. 15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020)................................................... 22, 24

*In re Lupron Mktg. and Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005)....................................................................... 17, 21

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
  270 F.R.D. 45 (D. Mass. 2010)....................................................................... 16, 22

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................. 17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)............................................................................... 19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009)................................................................................. 12

*In re Relafen Antitrust Litig.*,
 221 F.R.D. 260 (D. Mass. 2004) ............................................................... 22

*In re Relafen Antitrust Litig.*,
 231 F.R.D. 52 (D. Mass. 2005) .......................................................... 21, 23

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................................ 15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................... 15

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
 2020 WL 4212811 (N.D. Cal. July 22, 2020) ..................................... 15, 22

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950) ..................................................................................... 24

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
 582 F.3d 30 (1st Cir. 2009) ......................................................................... 13

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*,
 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ...................... 11, 12, 20, 23, 24

*Reid v. Donelan*,
 297 F.R.D. 185 (D. Mass. 2014) ................................................................ 12

*Roberts v. TJX Companies, Inc.*,
 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ................................ 13, 14, 16

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ..................................................................................... 20

*Walsh v. Popular, Inc.*,
 839 F. Supp. 2d 476 (D.P.R. 2012) ............................................................ 16

**Statutes**

Mass. Gen Laws Ch. 214, § 1B ................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 1, 11

Fed. R. Civ. P. 23(a) ............................................................................................... 19

iv

Fed. R. Civ. P. 23(a)(1) ................................................................................. 20

Fed. R. Civ. P. 23(a)(2) ................................................................................. 20

Fed. R. Civ. P. 23(a)(3) ................................................................................. 21

Fed. R. Civ. P. 23(a)(4) ............................................................................ 11, 21

Fed. R. Civ. P. 23(b) ..................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ........................................................................... 19, 21

Fed. R. Civ. P. 23(c)(3) ................................................................................. 23

Fed. R. Civ. P. 23(e) ....................................................................................... 1

Fed. R. Civ. P. 23(e)(1) ............................................................................ 11, 23

Fed. R. Civ. P. 23(e)(2) ................................................................................. 11

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................... 11

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................... 11, 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................... 14, 16

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................... 17

Fed. R. Civ. P. 23(e)(2)(C)(iv) ..................................................................... 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................ 11, 14, 17, 19

Fed. R. Civ. P. 23(g) ................................................................................ 12, 21

**Other Authorities**

*William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ............... 13

*William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ............... 17

## INTRODUCTION

Plaintiffs Megan Jackson and Susannah Smith ("Plaintiffs") respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of the Proposed Settlement with Defendant Suffolk University ("Suffolk" or "Defendant"). The settlement provides timely and significant benefits to Settlement Class Members whose personally identifiable information ("PII") was accessed by an unauthorized party during a security incident that Suffolk made public on November 30, 2022 (the "Incident"). Notice of this settlement may be issued as the Court is likely to find that the settlement is procedurally and substantively fair under Rule 23(e) of the Federal Rules of Civil Procedure and that the proposed Class may be certified.

Accordingly, pursuant to Rule 23, Plaintiffs ask that the Court enter an order that:

(a)     Preliminarily approves the settlement, subject to later final approval;

(b)     Conditionally certifies the Settlement Class with respect to claims against Suffolk;

(c)     Appoints Plaintiffs as class representatives for the Settlement Class;

(d)     Appoints Plaintiffs' Co-Lead Interim Class Counsel in the Litigation—Nicholas A. Colella of Lynch Carpenter, LLP and Kevin Laukaitis of Laukaitis Law LLC—as Class Counsel for the Settlement Class;

(e)     Appoints RG/2 Claims Administration LLC ("RG/2") as the Claims Administrator;

(f)     Approves the proposed notice plan and the proposed forms of Class Notice (attached as Exhibits B and C to the Settlement Agreement);

(g)     Sets a schedule leading to the Court's evaluation of whether to finally approve the settlement, including: (i) the date, time and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement (the "Final Approval Hearing"); (ii) the deadline for Settlement Class Members to exclude themselves (*i.e.*, opt out) from the settlement; (iii) the deadline for Class Counsel to submit their petition for attorneys' fees and expenses and for Plaintiffs to file their application for a Service Award; and (iv) the deadline for Settlement Class Members to object to the settlement and any of the related petitions; and

(h)     Stays all proceedings in the Litigation except those relating to approval of the settlement.

*See* [Proposed] Preliminary Approval Order, filed concurrently herewith.

## SUMMARY OF RELEVANT FACTUAL BACKGROUND

### I.    The Litigation

This is a putative class action arising from an Incident whereby Plaintiffs allege an unauthorized third-party was able to gain access to Suffolk's computer network on or about July 9, 2022, and remove certain files containing sensitive information stored therein. ECF No. 24, ¶¶ 42–43. The Incident allegedly impacted students who enrolled in class at Suffolk, a private university in Boston, Massachusetts, after June 2002. *Id.*, at ¶¶ 19, 44. The information compromised in the Incident potentially included students' sensitive PII, including their names, Social Security numbers, Driver's License numbers, state identification numbers, financial account information, and protected health information. *Id.*, at ¶ 45.

On January 4, 2023, Plaintiff Jackson filed a Class Action Complaint in the District of Massachusetts against Suffolk, asserting claims for negligence, negligence *per se*, violations of the Massachusetts Right to Privacy, Mass. Gen Laws Ch. 214, § 1B, and declaratory judgment. ECF No. 1. On January 31, 2023, Plaintiff Smith filed a Class Action Complaint against Suffolk in the District of Massachusetts, asserting similar claims to those asserted by Plaintiff Jackson. *See Smith v. Suffolk University*, Case No. 1:23-cv-10261-DJC (D. Mass), ECF No. 1. On March 6, 2023, Plaintiffs moved to consolidate their cases, and have their attorneys Nicholas A. Colella of Lynch Carpenter, LLP and Kevin Laukaitis of Laukaitis Law LLC, appointed as Co-Lead Interim Class Counsel. ECF Nos. 11, 16. The Court granted Plaintiffs' motion on March 8, 2023, and further directed Plaintiffs to file their Consolidated Class Action Complaint by or before March 21, 2023. ECF No. 18.  Plaintiffs thereafter filed their Consolidated Class Action Complaint on March 21, 2023. ECF No. 24.

During the meet and confer regarding consolidation, the Parties began discussing possible early resolution and subsequently agreed to mediate the matter. ECF No. 26. In light of their

32813564.1

agreement to mediate the case, on May 1, 2023, the Parties moved the Court to stay the action pending mediation, which the Court granted on May 4, 2023. ECF Nos. 26, 27. On September 8, 2023, the Parties then notified the Court that they had reached an agreement to resolve the action on a class-wide basis. ECF No. 32.

## II.    Settlement Negotiations

After agreeing to mediate, but prior to the mediation session, the Parties engaged in informal discovery to help facilitate resolution discussions. Declaration of Nicholas Colella dated November 7, 2023 ("Decl.") ¶ 19.  On May 24, 2023, the Parties engaged in a mediation session overseen by the experienced Judge Thomas R. Allen (Ret.) of ADR Systems. Decl. ¶ 20.  While the Parties were unable to reach a resolution during their mediation session, the Parties did not reach a total impasse. Decl. ¶ 20.

Following the mediation session, the Parties engaged in arm's-length negotiations including a series of offers and counteroffers. *Id*. After participating in multiple arm's length negotiations and exchanging additional information, including their respective legal positions and settlement proposals, the Parties reached an agreement in principle on September 7, 2023, which if approved by the Court, will resolve all claims in the litigation.  *Id*.  The Parties then worked towards drafting and finalizing the proposed Settlement Agreement. Decl. ¶ 22.  They further obtained quotes from several claims administrations and agreed that RG/2 would best serve as the settlement's Claims Administrator. Decl. ¶ 27.  The Parties continued drafting and finalizing the Settlement Agreement and proposed exhibits, reaching a final set of documents on or around November 7, 2023, and the Settlement Agreement was fully executed by all Parties as of November 9, 2023. Decl. ¶ 23.

The negotiations leading to the settlement were contentious and hard-fought, with Plaintiffs' Co-Lead Interim Class Counsel and Suffolk's Counsel each advocating for the best interests of the Class and Suffolk, respectively. *Id*. The resulting settlement reflects an agreement reached at arm's length, in good faith, and free of any collusion. *Id*. Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate, and is in the best interest of Plaintiffs and the proposed Settlement Class. *Id*. Although Suffolk denies liability, it likewise agrees that settlement is in the Parties' best interests. For those reasons, and because the settlement is contingent on Court approval, the Parties submit this settlement to the Court for its review.

## SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The settlement's terms are detailed in the Settlement Agreement attached to Plaintiff's concurrently filed motion for preliminary approval as Exhibit 1 to the Colella Declaration. The following is a summary of the material terms of the settlement.

## III.    The Settlement Class Definition

The Parties agree to the certification of the following Settlement Class (subject to the exclusions outlined below):

> All U.S. residents whose PII was impacted by the Incident, which was announced on or before November 30, 2022.

SA § 1.

Excluded from the Settlement Class are: (a) Defendant's officers and directors; (b) any entity in which Defendant has a controlling interest; and (c) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Settlement Classes are members of the judiciary to whom this case is assigned, their families and members of their staff. SA § 1.

4

## IV.    Settlement Consideration

The settlement provides the Settlement Class with significant monetary relief. Under the settlement, Suffolk has agreed to pay Compensation Claims not to exceed an aggregate of $1,250,000, as well as an additional two years of 1B credit monitoring to settle the claims of Plaintiffs and Settlement Class Members. SA §§ 4, 6. In addition to and separate from the consideration Suffolk has agreed to pay as Compensation Claims and credit monitoring services to Settlement Class Members, Suffolk has agreed to pay: (1) court-approved attorneys' fees and expenses; (2) court-approved Service Awards to Plaintiffs; and (3) the costs of settlement administration. SA §§ 10, 13(c).

### A.  Direct Monetary Relief to Settlement Class Members.

**Claims.** Under the settlement, Settlement Class Members may file claims for compensation for ordinary losses, extraordinary losses, and lost time. Specifically, Settlement Class Members may file claims for unreimbursed losses incurred as a result of the Incident ("Ordinary Losses"). SA § 4(A)(i). Such Ordinary Losses include both out-of-pocket expenses incurred as a result of the Incident and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between November 30, 2022 and the end of the Claims Period. *Id*. Settlement Class Members must submit reasonable documentation to the Claims Administrator to support their claims for Ordinary Losses. *Id*. The maximum amount a Settlement Class Member may recover for Ordinary Losses is $500. *Id*.

In addition to Ordinary Losses, Settlement Class Members may submit claims for compensation for documented monetary losses, professional fees (*e.g.*, attorneys' fees, accountants' fees), and fees for credit repair services incurred as a result of the Incident ("Extraordinary Losses"). SA § 4(A)(ii). In order to be entitled to Extraordinary Losses, Settlement

5

Class Members must submit reasonable documentation to provide that: (a) the loss is an actual, documented, and unreimbursed monetary loss; (b) the loss was more likely than not caused by the Incident; (c) the loss occurred between June 25, 2022, and the close of the Claims Period; (d) the loss is not already covered by one or more of the normal reimbursement categories; and (e) they made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit-monitoring insurance and identity-theft insurance. *Id*. The maximum amount a Settlement Class Member may recover for Extraordinary Losses is $5,000. *Id*.

In addition to Ordinary Losses and Extraordinary Losses, Settlement Class Members may submit claims for up to three hours of lost time, at $25 per hour, for time spent dealing with the Incident. SA § 4(A)(iii). In order to receive compensation for lost time, Settlement Class Members must attest to the accuracy of any claims made for lost time. *Id*.

In the alternative to filing claims for Ordinary Losses, Extraordinary Losses, and/or Lost Time, Settlement Class Members may instead elect to file a claim for a one-time $40 cash payment without the need to provide documentation for their losses or attest to time spent as a result of the Incident. SA § 4(B).

In the event that the aggregate amount of Settlement Class Members' approved Compensation Claims exceed $1,250,000, the Compensation Claims will be reduced *pro rata*. SA § 6.

Finally, in addition to the Compensation Claims discussed above, Settlement Class Members will receive an offer for a two-year membership of 1B credit monitoring with at least $1 million in fraud protection. SA § 4(C). This is in addition to any credit monitoring or identity theft protection offers Defendant made available to Settlement Class Members after the Incident. Such

credit monitoring services will be paid separate and apart from any monetary relief made available as Compensation Claims.

**Payment Timing and Provisions for Residual Funds.** Within thirty (30) days of the Effective Date, the Claims Administrator will process the approved Compensation Claims of Settlement Class Members and pay all approved Compensation Claims via a simple electronic payment method selected by the Settlement Class Member or by physical check mailed to an address provided by the Settlement Class Member. SA § 9(A). Settlement Class Members receiving payment by check under the Settlement will have at least 120 days from the date of issue to deposit any such payment. SA § 9(C). After that time, funds associated with any uncashed or canceled checks shall be deemed Residual Funds, and will be dispersed to a *cy pres* recipient agreed upon by the Parties and to be presented to the Court for approval. SA § 11.

### B.  Non-Monetary Relief and Business Practice Changes

The settlement also provides another important benefit to the Settlement Class in the form of data security improvements that Suffolk has made or will make in response to the Incident. The data security improvements include the maintenance of a written information security program, the hiring of a third-party cyber security firm to conduct penetration systems of its network on a periodic basis, employee training, a password reset for all users, the reimaging and scanning of all systems potentially impacted by the Incident, and the implementation of commercially reasonable tools for security monitoring and network logging. SA § 12. These data security improvements are beneficial to Settlement Class Members because they will provide additional security to Plaintiffs' and Class Members' PII in Suffolk's possession and reduce the likelihood of future data security incidents.

**C. Attorneys' Fees and Expenses, Service Awards, and Cost of Settlement Administration**

**Attorneys' Fees and Expenses.** Separate and apart from the monetary relief made available to the Settlement Class Members, Defendant agrees not to oppose an application by Class Counsel for an award of attorneys' fees and litigation costs not to exceed $227,000 (the "Class Counsel Payment"). Class Counsel and Plaintiffs agree not to seek or accept a Class Counsel Payment greater than $227,000. SA § 10(A).

**Service Awards.** Separate and apart from the monetary relief made available to the Settlement Class Members, Class Counsel shall also seek, and Defendant has agreed to pay, Service Awards of $2,500 per Plaintiff, subject to court approval. SA § 10(B). Class Counsel will submit requests for Court approval of the attorneys' fees and expenses and the Service Awards in advance of the date by which Settlement Class Members may object to the settlement.

**Cost of Settlement Administration.** Separate and apart from the monetary relief made available to Settlement Class Members, Suffolk will pay all costs of settlement administration, including the payment of the Claims Administrator. SA § 13(C).

**D. Dismissal and Release of Claims**

In exchange for the proposed settlement consideration and upon the Effective Date of the settlement, Plaintiffs and Settlement Class Members shall be deemed to have completely released and forever discharged all claims and causes of action pleaded or that could have been pleaded that are related in any way to the Incident. SA § 15.

**E. The Proposed Notice Program and Claims Program**

**1. Notice Program**

Subject to the Court's approval, the Parties propose to individually notify each Settlement Class Member of the settlement and their rights under it through U.S. mail and/or email (when

8

available). SA § 18. Specifically, Class Notice will be provided to the same population that received Suffolk's pre-lawsuit cybersecurity incident notification. SA § 13. Given the relationship between Suffolk and the Settlement Class Members, the prior round of pre-Lawsuit notification regarding the Incident, and the Claims Administrator's robust address checking programs, the Parties are confident in the accuracy of the proposed notice program. Within thirty (30) days of preliminary approval, the Claims Administrator will mail by U.S. Mail (and/or email when available) the Short Form Notice consistent with the form set forth in Exhibit B to the Settlement Agreement to Settlement Class Members. SA § 18. The Claims Administrator will also create a settlement website that contains copies of the detailed Long Form Notice set forth in Exhibit C to the Settlement Agreement; the Claim Form set forth in Exhibit A to the Settlement Agreement; and other relevant case documents and information. SA § 13. Further, the Claims Administrator shall provide notice via targeted media publication, including print and online publication, as outlined in the attached declaration from the Claims Administrator. SA § 18.

The proposed Class Notice includes a description of the material terms of the settlement and the forms of relief available to Settlement Class Members; a date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the settlement website at which Settlement Class Members can submit a Claim Form and access the Settlement Agreement and other related documents and information. SA § 13; *see also* SA, Ex. C.

Further, the proposed Class Notice advises Settlement Class Members of their rights to exclude themselves or object to the settlement and provides the deadline to do so, which the Parties propose will be 60 days from the date Class Notice is issued. SA ¶ 19. The Class Notice also

explains the full procedures for Settlement Class Members to exclude themselves or object to any aspect of the settlement. *See* SA, Ex. C.

The Claim Form (*see* SA, Ex. A) shall be available on the Settlement Website and clearly informs the Settlement Class Members of the process they must follow to submit a claim in order to receive a payment under the Settlement. It is simple and provides Settlement Class Members with a straightforward explanation of rights, along with instructions for Settlement Class Members to provide the information required to submit a valid claim. SA, Ex. A. Settlement Class Members may submit the Claim Forms via the settlement website by the end of the Claims Period or by copy via U.S. mail, so long as they are postmarked on or before the end of the Claims Period. *Id*.

### 2. Claims Program.

The final amount of Compensation Claims will be determined after the Claims Deadline, which the Parties propose is 120 days after the Claims Administrator first sends the Class Notice. SA § 18. Within thirty (30) days of the Effective Date, the Claims Administrator will then disburse funds to settlement Class Members who filed approved Compensation Claims. SA § 9. In the event approved Compensation Claims exceed $1,250,000, the approved Compensation Claims will be subject to a *pro rata* reduction. SA § 6.

### F. Settlement Administration

The proposed Claims Administrator is RG/2. SA § 13. The Claim's Administrator's duties include, among other things, the following: (1) assisting in the preparation of the Class Notice; (2) sending the Class Notice; (3) establishing and maintaining the settlement website, P.O. Box, and the toll–free telephone line for Settlement Class Member inquiries; (4) receiving and processing Claim Forms; (5) receiving and processing inquiries and requests for exclusion from Settlement Class Members; and (6) mailing settlement payment checks or processing electronic

32813564.1

payments. *Id.* A more fulsome and detailed list of the Claims Administrator's duties is located at SA § 13 of the Settlement Agreement.

## ARGUMENT

### I.    This Court Should Preliminarily Approve the Settlement.

This settlement satisfies all the relevant considerations for approval. At the preliminary approval stage, courts evaluate whether a proposed settlement is likely to be approved as fair, reasonable, and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. FED. R. CIV. P. 23(e)(1). A settlement may be approved where the Court finds "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2). Rules 23(e)(2)(A) and (B) focus on procedural fairness, *i.e.*, the "conduct of the litigation and of the negotiations leading up to the proposed settlement." FED. R. CIV. P. 23 advisory committee's note 2018 amendment. Rules 23(e)(2)(C) and (D) focus on the substantive fairness of the settlement, the "relief that the settlement is expected to provide to class members" compared with "the cost and risk involved in pursuing a litigated outcome." *Id.*

### A.    The Settlement Is Procedurally Fair.

#### 1.    Plaintiffs and Class Counsel have adequately represented the interest of the Class

Procedural fairness is satisfied, in part, because Plaintiffs' and Class Counsel's interests are aligned with the interest of the Class. *See Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 15-30024, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020).[1] Each Plaintiff is a current or former

---

[1] Courts analyze the adequacy of representation requirement of FED. R. CIV. P. 23(e)(2)(A) using the same considerations for representative adequacy under FED. R. CIV. P. 23(a)(4). *See Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *2-3.

32813564.1

Suffolk student whose personal information was compromised as a result of the Incident. Suffolk's alleged failure to implement reasonable data security measures impacted not just Plaintiffs' privacy, but the privacy of all Class Members, and as a result, Plaintiffs and the Class seek the same relief from the same injury. *See Reid v. Donelan*, 297 F.R.D. 185, 191 (D. Mass. 2014) (holding plaintiff was an adequate class representative despite certain factual differences between plaintiff and class members because each sought the same relief).

"The duty of adequate representation [also] requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). Plaintiffs satisfy this requirement when their attorneys demonstrate that they can "fairly and adequately protect the interests of the class." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011); *accord* FED.R.CIV. P. 23(g). Plaintiffs' Co-Lead Interim Class Counsel have prosecuted this Litigation from its inception and negotiated the proposed settlement. The attorneys representing Plaintiffs have years of experience litigating data breach class actions on behalf of consumers. *See* Colella Decl. Ex. 3-5 (firm resumes). To approve a settlement, "[t]he court must be satisfied . . . that Plaintiffs' counsel are qualified and experienced." *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *3. Plaintiffs' Co-Lead Interim Class Counsel's extensive class action experience, combined with their extensive efforts in this Litigation, provides direct evidence of Plaintiffs' Co-Lead Interim Class Counsel's adequacy.

## 2.  The Settlement is the product of arm's length negotiations

Courts may presume that a proposed settlement is procedurally fair when it is the result of arm's length negotiations. *See Bezdek v. Vibram USA Inc*., 79 F. Supp. 3d 325, 343 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015). This settlement bears all of the qualities of arm's length

negotiations. First, Judge Allen's participation in the settlement process is among the *indicia* of the settlement's fairness. *See William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator"); *accord Roberts v. TJX Companies, Inc*., No. 13-13142, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016).

Second, prior to negotiating the settlement, Plaintiffs and Plaintiffs' Co-Lead Interim Class Counsel were well-informed about the strengths and weaknesses of their claims against Suffolk. Decl. ¶ 19. Plaintiffs' Co-Lead Interim Class Counsel's negotiating strategy benefited from the information obtained from Suffolk's public disclosures, their independent investigation, and the pre-mediation information requests. *Id*.

Lastly, skilled and experienced counsel engaged in adversarial negotiations for each of the Parties. Suffolk is represented by counsel with extensive experience in privacy and data security law, and with complex class litigation generally. Settlement negotiations took several months and included mediation on May 24, 2023 that did not initially result in a settlement. *Id.* ¶ 21. When viewed in their totality, the circumstances fully support the conclusion that the settlement is procedurally fair.

**B.  The Settlement is Substantively Fair.**

In the First Circuit, the substantive fairness of a settlement is determined by "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). Among the factors the Court may use to apply this balancing test include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Roberts*, 2016 WL 8677312, at *6 (*quoting Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*")). The *Grinnell* factors overlap with guidance provided by amended Rule 23(e)(2)(C), which focuses on whether, "the relief provided for the class is adequate." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). These factors are likely to weigh in favor of the settlement's approval.

### 1. The *Grinnell* factors and Rule 23(e)(2)(C)(i) support approval of the settlement

#### a. *The costs, risks, and delay of trial and appeal favor the settlement*

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), which involves "consider[ing] the likely complexity, expense, and duration of the litigation, were this case to proceed to trial, as well as the plaintiffs' likelihood of success on the merits." *Bezdek*, 79 F. Supp. 3d at 344. The likelihood of success on the merits necessarily implicates other *Grinnell* factors as well, including the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with these *Grinnell* factors.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiffs and the Settlement Class. *See Bezdek*, 79 F. Supp. 3d at 345 (holding that this factor weighs in favor of approval when there is a "palpable uncertainty that a more favorable

14

result could be obtained through litigation"). If not for the settlement, Plaintiffs would immediately be faced with the potential for an adverse ruling on Suffolk's imminent motion to dismiss. While Plaintiffs believe they were likely to prevail, there are risks involved in data breach litigation—a relatively new area of law—including proving the highly technical issues of breach, causation, and damages. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval); *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 17-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."). These are just a few of the substantive hurdles to prevailing on the merits.

Plaintiffs likely would have incurred significant costs to prove their case through fact and expert discovery. *See, e.g., In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense"). Given the alleged misconduct, this Lawsuit would necessarily involve a battle of experts with respect to damages and other issues, likely escalating the litigation costs. The costs and risks would only further increase as the Parties contest class certification and motions *in limine*, and proceed through to trial and any related appeals. In this Lawsuit, achieving total success on the merits and obtaining the full measure of Plaintiffs' asserted damages is by no means guaranteed. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Settlement Class, injunctive relief, finality as to the Parties, and the preservation

of the Court's time and resources that can be redirected elsewhere. The settlement is an appropriate balance against the strength of Plaintiffs' case. *See Roberts*, 2016 WL 8677312, at *8 (finding settlement more favorable where "claimants would be able to receive funds more immediately than if the case went to trial"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth, and sixth *Grinnell* factors and Rule 23(e)(2)(C)(i) support approval of the settlement.

### b. *The remaining Grinnell factors also support approval of the settlement*

Given the present posture of the Lawsuit, it is too early to evaluate the second *Grinnell* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this settlement, Class Notice (as described *infra*) will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the settlement. Notably, Plaintiffs, whose interests are aligned with the Settlement Class, support the settlement.

The third *Grinnell* factor asks whether Plaintiffs have completed sufficient discovery "to provide the parties with adequate information about their respective litigation positions." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010). This does not require the parties to complete formal discovery; it is sufficient that they "conduct[ ] discovery in tandem with their settlement efforts" and are able to make an informed decision as to settlement. *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 481 (D.P.R. 2012). Plaintiffs' Co-Lead Interim Class Counsel's investigation with the information developed during the mediation process gave Plaintiffs a firm basis to evaluate the conduct at issue and the possible settlement value. Decl. ¶ 19.

The seventh *Grinnell* factor, the ability to withstand a greater judgment, is only relevant if "the settlement is less than what it might otherwise be but for the fact that the defendant's financial

circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). Universities, including Suffolk, have been significantly financially impacted as a result of Covid-19. Yet even if this did not rise to the level necessary to meet this factor, courts give this factor little weight. *Id.*; *accord In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005) (the seventh *Grinnell* factor is a "defendant oriented factor" that is "neutral" when dealing with defendants with "classic deep pockets").

Finally, the settlement should also be approved because it is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re Lupron*, 228 F.R.D. at 97. In the First Circuit specifically, there is scant case law regarding key issues in data breach litigation, including what is required to establish causation. As discussed above, Plaintiffs likely faced numerous risks to prevail, resulting in a steep discount of the present value of the case. In light of these risks, the settlement is within the bounds of what is reasonable.

**2. The settlement provides an effective method for distributing relief and treats class members equitably, thereby satisfying Fed. R. Civ. P. 23(e)(2)(C)(ii) and (e)(2)(D)**

Approval of the settlement also requires the Court to assess whether the allocation of funds among class members is "fair, reasonable and adequate." *Hochstadt v. Boston Sci Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010). In this case, the settlement provides a simple, straightforward method for Settlement Class Members to file a claim and receive a payment, thus incentivizing participation. *See Rubenstein* at § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"). As stated above, Settlement Class Members will be required to

submit a Claim Form and minimal information to receive compensation. *See* SA, Ex. A. This information is typical of what courts have permitted in other cases.[2] Additionally, eligible Claimants can elect to receive approved Compensation Claims via a simple electronic payment method selected by the Settlement Class Member.

The payments will be distributed to Claimants based on the type of claims made. Each Claimant who submits a valid claim is eligible to receive up to $5,000 for an Extraordinary Loss, up to $500 for an Ordinary Loss, up to $75 for time spent, or $40 as a cash alternative, which may be decreased *pro rata* depending on the total volume of Claims. SA § 4. Furthermore, each Claimant has the ability to receive an additional two years of credit monitoring.

Any potential inequity in the settlement is avoided through the use of a notice program that advises Settlement Class Members of their rights, including the impact of the releases. Should a Settlement Class Member wish not to be bound by the release, that Settlement Class Member may opt out of the settlement. Because the distribution of the compensation and the settlement's release wholly avoid any improper preferences, these factors weigh in favor of preliminary approval of the settlement.

3.  **The requested attorneys' fees and other awards are paid separately to ensure that the Settlement Class receives adequate relief**

The Settlement Agreement provides that Plaintiffs' Co-Lead Interim Class Counsel's attorneys' fee award shall be paid separate and apart from the compensation to the Settlement Class and thus, does not take away from any benefit to Settlement Class Members. Plaintiffs' Co-Lead Interim Class Counsel's will limit their attorneys' fee and expenses request to no more than

---

[2] See, *e.g.* Claim Form, *In re TJX Companies, Inc.*, No. 1:07-cv-10162, (D. Mass. Dec. 20, 2007) (ECF No. 293-4) (claim form requiring submission of name, mailing address, and supporting documentation).

$227,000, which may be paid upon final approval. *See* SA § 10(A). Similarly, any Service Award that Plaintiffs request is limited to $2,500 each and will be paid directly by Suffolk. SA § 10(B). Attorneys' fees and Service Award amounts were negotiated only after the substantive terms of the Class relief were agreed upon. Decl. ¶ 21.

### 4. There are no unidentified agreements that impact the adequacy of relief for the Settlement Class

An additional consideration in the context of a settlement approval is whether there are other agreements that would have an impact on a settlement. *See* FED. R. CIV. P. 23(e)(2)(C)(iv), 23(e)(2)(D). Here, all of the relevant terms for the settlement have been disclosed in the Settlement Agreement, including Suffolk's qualified right to terminate the Settlement Agreement under certain circumstances before final approval. See SA § 26. This "blow" provision is common in class action settlements. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015).

## II. This Court Should Conditionally Certify the Proposed Settlement Class.

For a settlement class to be certified, it must satisfy each requirement delineated in Rule 23(a), as well as at least one of the separate divisions of Rule 23(b). As explained below, the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3) for preliminary and final approval. Accordingly, the Court should conditionally certify the Settlement Class.

### A. The Requirements of Fed. R. Civ. P. 23(a) are Satisfied.

Class certification under Rule 23(a) requires: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The Settlement Class satisfies each of these requirements.

1.  **The Settlement Class is so numerous the joinder of individual members is impracticable**

Rule 23(a)(1) requires that the class be so numerous to make joinder of its members "impracticable." FED. R. CIV. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action and "[t]he threshold for numerosity is not high." *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at \*1 (internal citation omitted). There are approximately 53,000 geographically dispersed individuals within the Settlement Class. Because joinder would be impracticable, Rule 23(a)(1) is satisfied. *See Hochstadt*, 708 F. Supp. 2d at 102 (finding proposed settlement class of 12,000 "easily met" numerosity requirement).

2.  **There are questions of law and fact common to the settlement class**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "The threshold of commonality is not a difficult one to meet." *Hochstadt*, 708 F. Supp. 2d at 102.

Several questions of law and fact are common to all Settlement Class Members, including (i) whether Suffolk violated common law duties, consumer protection laws, or other legal obligations and industry standards; (ii) whether Suffolk failed to properly secure and safeguard Settlement Class Members' personal information; (iii) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief; and (iv) the appropriate measure of such damages and relief. The proof required to establish Suffolk's alleged unlawful conduct is common to all members of the Settlement Class and therefore satisfies Rule 23(a)(2).

### 3.   Representative Plaintiffs' claims are typical of the claims of the settlement class

Rule 23(a)(3) requires that class representatives' claims be "typical" of Settlement Class Members' claims. FED. R. CIV. P. 23(a)(3). "Typicality is not a demanding test" and does not require that Plaintiffs' claims be identical to those of absent class members. *In re Lupron*, 228 F.R.D. at 89. It is enough that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005). Plaintiffs' claims and injuries arise from the same conduct and the same Incident, Suffolk's alleged failure to adopt and maintain reasonable security measures to protect customer personal information and, as a result, rely on the same legal theories as the Settlement Class. This is sufficient to satisfy Rule 23(a)(3).

### 4.   The interests of Plaintiffs and Plaintiffs' Co-Counsel are aligned with the interests of the Settlement Class

Under Rule 23(a)(4), the court must find that "the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). As described in Section I.A.1, *supra*, Plaintiffs and Plaintiffs' Co-Lead Interim Class Counsel satisfy the adequacy requirement. Under Rule 23(g), the Court should appoint Plaintiffs' Co-Lead Interim Class Counsel as Class Counsel for the Settlement Class.

### B.   The Requirements of FED. R. CIV. P. 23(b)(3) are Satisfied.

Under Rule 23(b)(3), Plaintiffs must establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These requirements are satisfied here.

1.  **Questions common to all Settlement Class Members predominate over any potential individual questions**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re M3*, 270 F.R.D. at 56. "The First Circuit has held that this requirement is satisfied where, notwithstanding individualized concerns, a sufficient constellation of common issues binds class members together." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004).

Several courts have found that common issues, such as whether a defendant maintained reasonable security measures, predominate over individualized issues in data breach cases. *See, e.g., In re Yahoo!*, 2020 WL 4212811, at *7; *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-2800, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("[T]he focus would remain on the extent and sufficiency of the specific security measures that [defendant] employed. This is the precise type of predominant question that makes class-wide adjudication worthwhile."). At the heart of Plaintiffs' claims is whether Suffolk failed to adopt and maintain reasonable security measures to protect personal information, promptly detect the Data Breach, remedy and mitigate the effects of the Data Breach, and provide timely notification to affected persons. These questions are common and predominate over individualized issues.

2.  **A class action is the superior method to fairly and efficiently adjudicate the matter**

Plaintiffs must show that a class action is superior to individual actions, which is evaluated by considering:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of

the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

*In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. In the context of a proposed settlement-only class, courts need not inquire about the case manageability for trial purposes. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the interest of any one class member in controlling the prosecution of a separate action is likely low, considering that the costs of litigating a claim would most likely exceed any individual recovery. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 71 (class action method was superior "[e]specially for the individual consumer, where the individual losses are low [and] the transaction costs in bringing suit are likely prohibitive"). Further, there are no other litigations pending against Suffolk arising out of the Data Breach that would require the Court's consideration. Thus, the superiority requirement is satisfied.

## III.    The Notice Plan and Class Notice Should Be Approved.

Upon preliminarily approving the settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Notice need not reach every class member, but must be "the best notice practicable" under the circumstances. *Nat'l Ass'n of the Deaf*, 2020 WL 1495903, at *4 (quoting *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985)). The Class Notice will inform Settlement Class Members of the substantive terms of the settlement as well as: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The proposed notice plan and related forms of notice (*see* SA, Ex.'s B-C) are "reasonably calculated . . . to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, <u>339 U.S. 306, 314</u> (1950). The notice plan includes sending the Short Form Notice (SA, Ex. B) in the body of an email to Settlement Class Members for which Suffolk has working emails. SA § 13(A). The email will contain a link to the Long Form Notice, the Claim Form, and the settlement website. Email has become a commonly accepted means of notice sufficient to satisfy the requirements of due process. *See, e.g., In re Equifax*, <u>2020 WL 256132,</u> at *28 ("[C]ourts have increasingly approved utilizing email to notify class members of proposed class settlements, and such notice was appropriate in this case."); *Nat'l Ass'n of the Deaf*, <u>2020 WL 1495903</u>, at *4 (finding email notice and a link of the notice on each entities respective websites to be "the most reasonable manner to ensure that class members receive word of the settlement.").

Suffolk will also direct Class Members to the Class Notice directly from its website, and a settlement website will be created, providing additional means to notify Class Members. *Nat'l Ass'n of the Deaf*, <u>2020 WL 1495903</u>, at *4 ("Online publication of the notice is particularly appropriate here because the class . . . consists of individuals who access online content and have at least some familiarity with the Internet."). On the settlement website, Class Members can review and obtain: (i) a blank Claim Form for the Settlement; (ii) the Class Notice; (iii) the Settlement Agreement; and (iv) key pleadings and Court orders. The Settlement Administrator will also operate a toll-free telephone number with automated answers to Settlement Class Members' questions. Additionally, Suffolk will publicize notice in certain media outlets, as agreed upon by the Parties.

Plaintiffs' Co-Counsel recommend that RG/2 be appointed as Claims Administrator. RG/2 developed the Class Notice plan and has significant experience administering class action settlements. *See* Decl., Ex. 2.

## IV.    Proposed Schedule

| Event | Date |
|---|---|
| Notice Completion Deadline | No later than thirty (30) days after entry of this Preliminary Approval Order (the "Notice Date") |
| Postmark/Email Deadline for Requests for Exclusion (Opt-Outs) | No later than sixty (60) days after the Notice Date ("Exclusion/Objection Deadline") |
| Filing and Service Deadline for Objections | No later than sixty (60) days after the Notice Date, i.e., the Exclusion/Objection Deadline |
| Motion for Class Counsel Payment and Service Awards to be filed by Class Counsel | No later than fourteen (14) days before the Exclusion/Objection Deadline |
| Claims Deadline | No later than one hundred twenty (120) days after the Notice Date |
| Deadline to file Motion for Final Approval of the Settlement | No later than fourteen (14) days before the Final Approval Hearing |
| Final Approval Hearing | At least one hundred fifty (150) days after entry of the Preliminary Approval Order |

## CONCLUSION

For the foregoing reasons, the proposed settlement warrants the Court's preliminary approval. Plaintiffs respectfully request that the Court enter the accompanying proposed order that among other things: (a) preliminarily approves the settlement, subject to later, final approval; (b) conditionally certifies a Settlement Class on the claims against Suffolk; (c) appoints Plaintiffs as representatives of the Settlement Class; (d) appoints Plaintiffs' Co-Lead Interim Class Counsel as Class Counsel for the Settlement Class; (e) appoints RG/2 as the Claims Administrator for the Settlement; (f) approves the proposed forms of Class Notice to the Settlement Class of the settlement and the proposed Class Notice plan; (g) sets a schedule leading to the Court's consideration of final approval of the Settlement; and (h) stays all proceedings as to Suffolk except with respect to approval of the Settlement.

Dated: November 14, 2023

Respectfully submitted,

*/s/ Jason M. Leviton*
Jason M. Leviton
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
jason@blockleviton.com

Nicholas Colella (admitted *pro hac vice*)
Gary F. Lynch (admitted *pro hac vice*)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
nickc@lcllp.com
gary@lcllp.com

Kevin Laukaitis (admitted *pro hac vice*)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, # 10518
San Juan, PR 00907
Tel.: (215) 789-4462
klaukaitis@laukaitislaw.com

James A. Francis (admitted *pro hac vice*)
John Soumilas (admitted *pro hac vice*)
**FRANCIS MAILMAN SOUMILAS, PC**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Erica C. Mirabella (BBO# 676750)
**MIRABELLA LAW, LLC**
132 Boylston Street, 5th Floor

32813564.1

Boston, MA 02116
T: (617) 580-8270
F: (617) 583-1905

*Counsel for Plaintiffs*

27