| | |
|---|---|
| MEGAN JACKSON and SUSANNAH SMITH, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SUFFOLK UNIVERSITY,<br><br>      Defendant. | Case No. 1:23-CV-10019<br><br>**Honorable Judge Denise J. Casper** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

SUMMARY OF RELEVANT FACTUAL BACKGROUND ....................................................... 2

I. The Litigation.................................................................................................................. 2

II. Settlement Negotiations. ............................................................................................... 3

SUMMARY OF THE TERMS OF THE LITIGATION ............................................................ 4

III. The Settlement Class Definition. ................................................................................... 4

IV. Settlement Consideration. .............................................................................................. 4

A. Direct Monetary Relief to Settlement Class Members.............................................. 5

B. Non-Monetary Relief and Business Practice Changes.............................................. 7

C. Dismissal and Release of Claims. ............................................................................. 7

RESULTS OF SETTLEMENT ADMINISTRATION AND CLASS NOTICE PLAN.................. 8

ARGUMENT........................................................................................................................ 10

V. The Court Should Grant Final Approval of the Settlement. ........................................... 10

D. The Settlement Is Procedurally Fair......................................................................... 12

E. The Settlement Is Substantively Fair......................................................................... 14

VI. The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class

Members with Adequate Notice of the Settlement. .......................................................... 23

VII. The Proposed Settlement Class Should be Certified for Final Approval of the Proposed

Settlement. ..................................................................................................................... 25

CONCLUSION.................................................................................................................... 26

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Attias v. CareFirst, Inc.*,
  344 F.R.D. 38 (D.D.C. 2023) ............................................................... 16

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015) ..................................................... 16

*Bowdle v. King's Seafood Company, LLC*,
  Case No. 8:21-cv-01784 (C.D. Cal.) .................................................... 20

*Bussie v. Allmerica Financial Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................... 20

*Carlson v. Target Enter., Inc.*,
  447 F. Supp. 3d 1 (D. Mass. 2020) ....................................................... 11

*Carter v. Vivendi Ticketing US LLC*,
  No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ...................... 21

*Charlie et al. v. Rehoboth McKinley Christian Health Care Services*,
  Case No. 1:21-cv-00652 (D.N.M.) ........................................................ 19

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ........................................................ 10, 13

*Desue v. 20/20 Eye Care Network, Inc.*,
  No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) ................... 21

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ....................................................... 12, 19, 22

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................. 12

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ...................... 15, 16

*Hashemi v. Bosley, Inc.*,
  No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ............... 19, 21

*Henderson v. Bank of N.Y. Mellon, N.A.*,
  332 F. Supp. 3d 419 (D. Mass. 2018) ..................................................... 25

*Hill v. State Street Corp.*,
   No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ............................................ 24

*Hochstadt v. Boston Sci Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .......................................................................................... 17

*In re Cabletron Sys., Inc. Sec. Litig.*,
   239 F.R.D. 30 (D.N.H. 2006) ..................................................................................................... 21

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ................................................................................................... 15

*In re Fleet/Norstar Sec. Litig.*,
   935 F. Supp. 99 (D.R.I. 1996) .................................................................................................... 10

*In re Forefront Data Breach Litig.*,
   No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ................................................ 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................................ 18

*In re Lupron Mktg. and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) .................................................................................................. 22

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
   270 F.R.D. 45 (D. Mass. 2010) ............................................................................................ 22, 26

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ........................................................................................ 22

*In re PaineWebber P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................... 19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ........................................................................................................ 13

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
   No. 11-md-02208, 2014 WL 6968424 (D. Mass. Dec. 9, 2014)................................................ 13

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) .................................................................................................. 19

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................................ 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-md- 2522 (PAM) (JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ...................... 15

*In re TelexFree Sec. Litig.*,
475 F. Supp. 3d 15 (D. Mass. 2020) ...................................................................... 24

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act Litig.*,
No. 2:13-MD-2426, 2016 WL 543137 (D. Me. Feb. 10, 2016).................................. 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................. passim

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................... 15

*Jean-Pierre v. J&L Cable TV Servs, Inc.*,
No. 1:18-cv-11499, 2021 WL 1862102 (D. Mass. May 10, 2021) ........................... 12

*Lazar v. Pierce*,
757 F.2d 435 (1st Cir. 1985) ................................................................................. 10

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004) ........................................................................... 25

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*,
No. 3:15-cv-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020)................... 23

*Purinton v. Moody's Co-Worker Owned, Inc.*,
No. 2:20-CV-00296-JAW, 2023 WL 167560 (D. Me. Jan. 12, 2023)....................... 11

*Rivero Souss v. Banco Santander S.A.*,
No. 09-2305 (FAB), 2011 WL 13350165 (D.P.R. June 9, 2011) ........................... 19

*Roberts v. TJX Cos., Inc.*,
C.A. No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016).............. 20, 21, 22

*Saunders v. Getchell Agency, Inc.*,
No. 1:13-cv-00244, 2015 WL 1292594 (D. Me. Mar. 23, 2015)............................ 25

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................... 21

*Voss v. Rolland*,
592 F.3d 242 (1st Cir. 2010)................................................................................. 11

*Walsh v. Popular, Inc.*,
839 F. Supp. 2d 476 (D.P.R. 2012) ............................................................................................... 22

**Rules**

FED. R. CIV. P. 23 ........................................................................................................... passim

## INTRODUCTION

Plaintiffs Megan Jackson and Susannah Smith (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully move this Court for final approval of the Settlement Agreement and Release ("Settlement Agreement" or "Settlement") with Defendant Suffolk University ("Suffolk" or "Defendant") and entry of the proposed Final Approval Order and Final Judgment filed herewith, pursuant to the Federal Rules of Civil Procedure.[1]

On January 8, 2024, the Court granted preliminary approval of the Settlement, and in doing so found that it will likely be able to approve the Settlement and certify the Settlement Class. *See* Prelim. Approval Order, ECF No. 39 ¶¶ 3, 5. The factors that supported preliminary approval of the Settlement have only been bolstered by subsequent events. To date 48,868 Settlement Class Members received direct notice of the Settlement and 1,361 claims have been filed. *See* Declaration of Jessie Montague ("Montague Decl.") ¶¶ 8, 11, filed herewith. Thus far, Class Counsel is only aware of seven (7) potential Settlement Class Members choosing to opt out of the Settlement, and zero objections have been received. *See* Montague Decl. ¶¶ 9; Declaration of Kevin Laukaitis ("Laukaitis Decl.") ¶ 14, filed herewith. For the reasons articulated below and in Plaintiffs' memorandum in support for preliminary approval of the Settlement (ECF No. 37) ("Prelim Approval Mem."),[2] the Settlement is an excellent result for the Settlement Class, the Court should find that the Settlement is fair reasonable, and adequate, and the Court should therefore grant final approval of the Settlement.

---

[1] Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the proposed Settlement Agreement and Release. (ECF No. 37-1). Unless otherwise noted, internal citations and quotations marks are omitted and ECF citations are to the docket.

[2] Plaintiffs incorporate by reference the arguments made in their motion for preliminary approval which similarly supports this motion for final approval.

## SUMMARY OF RELEVANT FACTUAL BACKGROUND

### I.     The Litigation

This is a putative class action arising from an Incident whereby Plaintiffs allege an unauthorized third-party was able to gain access to Suffolk's computer network on or about July 9, 2022, and remove certain files containing sensitive information stored therein. ECF No. 24, ¶¶ 42–43. The Incident allegedly impacted students who enrolled in class at Suffolk, a private university in Boston, Massachusetts, after June 2002. *Id.*, at ¶¶ 19, 44. The information compromised in the Incident potentially included students' sensitive PII, including their names, Social Security numbers, Driver's License numbers, state identification numbers, financial account information, and protected health information. *Id.*, at ¶ 45.

On January 4, 2023, Plaintiff Jackson filed a Class Action Complaint in the District of Massachusetts against Suffolk, asserting claims for negligence, negligence per se, violations of the Massachusetts Right to Privacy, Mass. Gen Laws Ch. 214, § 1B, and declaratory judgment. ECF No. 1. On January 31, 2023, Plaintiff Smith filed a Class Action Complaint against Suffolk in the District of Massachusetts, asserting similar claims to those asserted by Plaintiff Jackson. *See Smith v. Suffolk University*, Case No. 1:23-cv-10261-DJC (D. Mass), ECF No. 1. On March 6, 2023, Plaintiffs moved to consolidate their cases, and have their attorneys Nicholas A. Colella of Lynch Carpenter, LLP and Kevin Laukaitis of Laukaitis Law LLC, appointed as Co-Lead Interim Class Counsel. ECF Nos. 11, 16. The Court granted Plaintiffs' motion on March 8, 2023, and further directed Plaintiffs to file their Consolidated Class Action Complaint by or before March 21, 2023. ECF No. 18.  Plaintiffs thereafter filed their Consolidated Class Action Complaint on March 21, 2023. ECF No. 24.

During the meet and confer regarding consolidation, the Parties began discussing possible early resolution and subsequently agreed to mediate the matter. ECF No. 26. In light of their

agreement to mediate the case, on May 1, 2023, the Parties moved the Court to stay the action

pending mediation, which the Court granted on May 4, 2023. ECF Nos. 26, 27. On September 8,

2023, the Parties then notified the Court that they had reached an agreement to resolve the action

on a class-wide basis. ECF No. 32.

## II.    Settlement Negotiations.

After agreeing to mediate, but prior to the mediation session, the Parties engaged in

informal discovery to help facilitate resolution discussions. *See* Declaration of Nicholas Colella in

Support of Plaintiffs' Motion for Preliminary Approval of Settlement dated November 7, 2023

(ECF No. 36-3) ("Colella Decl.") ¶ 19.   On May 24, 2023, the Parties engaged in a mediation

session overseen by the experienced Judge Thomas R. Allen (Ret.) of ADR Systems. Colella Decl.

¶ 20.  While the Parties were unable to reach a resolution during their mediation session, the Parties

did not reach a total impasse. Colella Decl. ¶ 20.

Following the mediation session, the Parties engaged in arm's-length negotiations

including a series of offers and counteroffers. *Id*. After participating in multiple arm's length

negotiations and exchanging additional information, including their respective legal positions and

settlement proposals, the Parties reached an agreement in principle on September 7, 2023, which

if approved by the Court, will resolve all claims in the litigation.  *Id*.  The Parties then worked

towards drafting and finalizing the proposed Settlement Agreement. Colella Decl. ¶ 22.  They

further obtained quotes from several claims administrations and agreed that RG/2 would best serve

as the settlement's Claims Administrator. Colella Decl. ¶ 27.   The Parties continued drafting and

finalizing the Settlement Agreement and proposed exhibits, reaching a final set of documents on

or around November 7, 2023, and the Settlement Agreement was fully executed by all Parties as

of November 9, 2023. Colella Decl. ¶ 23.

The negotiations leading to the settlement were contentious and hard-fought, with Plaintiffs' Co-Lead Interim Class Counsel and Suffolk's Counsel each advocating for the best interests of the Class and Suffolk, respectively. *Id.* The resulting settlement reflects an agreement reached at arm's length, in good faith, and free of any collusion. *Id.* Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate, and is in the best interest of Plaintiffs and the proposed Settlement Class. *Id.* Although Suffolk denies liability, it likewise agrees that settlement is in the Parties' best interests. For those reasons, and because the settlement is contingent on Court approval, the Parties submit this settlement to the Court for its review.

## SUMMARY OF THE TERMS OF THE LITIGATION

**III.    The Settlement Class Definition.**

The Parties agree to the certification of the following Settlement Class (subject to the exclusions outlined below):

> All U.S. residents whose PII was impacted by the Incident, which was announced on or before November 30, 2022.

SA § 1.

Excluded from the Settlement Class are: (a) Defendant's officers and directors; (b) any entity in which Defendant has a controlling interest; and (c) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Settlement Classes are members of the judiciary to whom this case is assigned, their families and members of their staff. SA § 1.

**IV.    Settlement Consideration.**

The settlement provides the Settlement Class with significant monetary relief. Under the settlement, Suffolk has agreed to pay Compensation Claims not to exceed an aggregate of

$1,250,000, as well as an additional two years of 1B credit monitoring to settle the claims of Plaintiffs and Settlement Class Members. SA §§ 4, 6. In addition to and separate from the consideration Suffolk has agreed to pay as Compensation Claims and credit monitoring services to Settlement Class Members, Suffolk has agreed to pay: (1) court-approved attorneys' fees and expenses; (2) court-approved Service Awards to Plaintiffs; and (3) the costs of settlement administration. SA §§ 10, 13(c).

### A.  Direct Monetary Relief to Settlement Class Members.

**Claims**. Under the settlement, Settlement Class Members may file claims for compensation for ordinary losses, extraordinary losses, and lost time. Specifically, Settlement Class Members may file claims for unreimbursed losses incurred as a result of the Incident ("Ordinary Losses"). SA § 4(A)(i). Such Ordinary Losses include both out-of-pocket expenses incurred as a result of the Incident and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between November 30, 2022 and the end of the Claims Period. *Id*. Settlement Class Members must submit reasonable documentation to the Claims Administrator to support their claims for Ordinary Losses. *Id*. The maximum amount a Settlement Class Member may recover for Ordinary Losses is $500. *Id*.

In addition to Ordinary Losses, Settlement Class Members may submit claims for compensation for documented monetary losses, professional fees (e.g., attorneys' fees, accountants' fees), and fees for credit repair services incurred as a result of the Incident ("Extraordinary Losses"). SA § 4(A)(ii). In order to be entitled to Extraordinary Losses, Settlement Class Members must submit reasonable documentation to provide that: (a) the loss is an actual, documented, and unreimbursed monetary loss; (b) the loss was more likely than not caused by the Incident; (c) the loss occurred between June 25, 2022, and the close of the Claims Period; (d) the

loss is not already covered by one or more of the normal reimbursement categories; and (e) they made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit-monitoring insurance and identity-theft insurance. *Id*. The maximum amount a Settlement Class Member may recover for Extraordinary Losses is $5,000. *Id*.

In addition to Ordinary Losses and Extraordinary Losses, Settlement Class Members may submit claims for up to three hours of lost time, at $25 per hour, for time spent dealing with the Incident. SA § 4(A)(iii). In order to receive compensation for lost time, Settlement Class Members must attest to the accuracy of any claims made for lost time. *Id.*

In the alternative to filing claims for Ordinary Losses, Extraordinary Losses, and/or Lost Time, Settlement Class Members may instead elect to file a claim for a one-time $40 cash payment without the need to provide documentation for their losses or attest to time spent as a result of the Incident. SA § 4(B).

In the event that the aggregate amount of Settlement Class Members' approved Compensation Claims exceed $1,250,000, the Compensation Claims will be reduced pro rata. SA § 6.

Finally, in addition to the Compensation Claims discussed above, Settlement Class Members will receive an offer for a two-year membership of 1B credit monitoring with at least $1 million in fraud protection. SA § 4(C). This is in addition to any credit monitoring or identity theft protection offers Defendant made available to Settlement Class Members after the Incident. Such credit monitoring services will be paid separate and apart from any monetary relief made available as Compensation Claims.

**Payment Timing and Provisions for Residual Funds.** Within thirty (30) days of the Effective Date, the Claims Administrator will process the approved Compensation Claims of Settlement Class Members and pay all approved Compensation Claims via a simple electronic payment method selected by the Settlement Class Member or by physical check mailed to an address provided by the Settlement Class Member. SA § 9(A). Settlement Class Members receiving payment by check under the Settlement will have at least 120 days from the date of issue to deposit any such payment. SA § 9(C). After that time, funds associated with any uncashed or canceled checks, if any, shall be deemed Residual Funds, and will be dispersed to a *cy pres* recipient agreed upon by the Parties and to be presented to the Court for approval. SA § 11.

### B. Non-Monetary Relief and Business Practice Changes.

The settlement also provides another important benefit to the Settlement Class in the form of data security improvements that Suffolk has made or will make in response to the Incident. The data security improvements include the maintenance of a written information security program, the hiring of a third-party cyber security firm to conduct penetration systems of its network on a periodic basis, employee training, a password reset for all users, the reimaging and scanning of all systems potentially impacted by the Incident, and the implementation of commercially reasonable tools for security monitoring and network logging. SA § 12. These data security improvements are beneficial to Settlement Class Members because they will provide additional security to Plaintiffs' and Class Members' PII in Suffolk's possession and reduce the likelihood of future data security incidents.

### C. Dismissal and Release of Claims.

In exchange for the proposed settlement consideration and upon the Effective Date of the settlement, Plaintiffs and Settlement Class Members shall be deemed to have completely released

and forever discharged all claims and causes of action pleaded or that could have been pleaded that are related in any way to the Incident. SA § 15.

## RESULTS OF SETTLEMENT ADMINISTRATION AND CLASS NOTICE PLAN

Following Preliminary Approval, the Settlement Administrator completed the Class Notice plan set forth in the Settlement. *See* Montague Decl. ¶¶ 5-6. The Class Notice plan was designed to reach as many Settlement Class Members as practicable. Montague Decl. ¶¶ 5-6. The Class Notice included the required description of the material Settlement terms; the Opt-Out Deadline for Settlement Class members to opt-out of the Settlement Class; the Objection Deadline by which Settlement Class Members may object to the Settlement; the Final Approval Hearing date and time; and the Settlement Website address at which Settlement Class Members may access the Long Form Notice, Settlement Agreement, Claim Form, and other related documents and information. Montague Decl. ¶¶ 5-6.

Pursuant to the Preliminary Approval Order, Suffolk provided RG/2 with the Settlement Class List containing information sufficient to provide Settlement Class Members with direct notice. *See* ECF No. 42-2, ¶ 6; Montague Decl. ¶¶ 4-5. The Settlement Class List contained the names and addresses of 52,775 potential members of Settlement Class Members. *See* Id.; Montague Decl. ¶ 8. RG/2 then processed the names and addresses through the United States Postal Service National Change of Address database. ECF No. 42-2, ¶ 9. Thereafter, on February 7, 2024, RG/2 implemented the Class Notice plan, disseminating the Short Form Notice via email to 25,854 potential members of the Settlement Class and via U.S. mail to 52,775 potential members of the Settlement Class. *See* ECF No. 42-2, ¶¶ 9-10. 13,124 Short Form Notices were returned as undeliverable, and RG/2 searched for available addresses and promptly resent the returned Short

Form Notices. Montague Decl. ¶ 8. A customary long-form Notice with more detail than the mailed Notice was also made available on the Settlement Website. ECF No. 42-2, ¶ 15.

Further, on February 5, 2024, the RG/2 established an informational Settlement Website, https://www.suffolkdatasettlement.com/, allowing Settlement Class Members to obtain detailed information about the action, the Settlement, and to review important documents, including the Long Form Notice, Settlement Agreement, Preliminary Approval Order, and Motion for Attorneys' Fees. ECF No. 42-2, ¶ 15. The Final Approval Motion and Memorandum will also be posted to the website.

Additionally, RG/2 arranged for a version of the Short Form Notice to be published in the Boston Globe on two consecutive Sundays, February 11, 2024, and February 18, 2024. ECF No. 42-2, ¶ 14. To reach as many Settlement Class Members as possible, RG/2 Claims arranged for an internet publication notice campaign, including banner notices with links to the Settlement Website to be disseminated through different internet platforms. Notices appeared on four separate "channels" of internet/social media platforms, each of which is optimized to reach the target audience. To that end, the internet notices ran on websites and social media platforms targeting the class's demographics. The platforms/channels were Google, Bing, Facebook, and Instagram. ECF No. 42-2, ¶ 16. The Internet and Social Media publication resulted in 1,310,605 digital impressions. Id.

RG/2 also sent a reminder email ("Reminder Email") to Settlement Class Members who had not submitted Claim Forms, objected, or otherwise opted out as of April 15, 2024. Montague Decl. ¶ 7. RG/2 caused the Reminder Email to be emailed to 25,413 email addresses. *Id* Montague Decl. ¶ 7. Of the total 25,413 Reminder Emails sent, RG/2 received confirmation that 24,677 were delivered to Settlement Class Members, for a delivery rate of 97%. *See* Montague Decl. ¶ 7.

The deadline to submit an objection or opt out of Settlement occurred on April 8, 2024. To date, no Settlement Class member has objected to the Settlement and only seven (7) Settlement Class Member have submitted a request for exclusion. Montague Decl. ¶ 9. RG/2 has received 1,361 Claim Forms. 1,029 Claim Forms have requested the $40 Alternative Cash Payment. Montague Decl. ¶ 11. 21 Claim Forms have requested reimbursement for ordinary losses, 229 Claim Forms have requested reimbursement for lost time; and 8 Claim Forms have requested reimbursement for extraordinary losses. Montague Decl. ¶ 11. Of the 1,361 Claim Forms filed, 956 have also requested identity protection services. Id.

The Class Notice here was the best notice practicable under the circumstances and fully complied with all requirements of due process under the United States Constitution. *See* ECF No. 42-2, ¶¶ 14-21; Montague Decl. ¶¶ 5-6.

## ARGUMENT

### V.     The Court Should grant Final Approval of the Settlement.

Settlement of class action litigation is favored by federal courts. *See, e.g.*, *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements."). A district court may approve a class action settlement if it finds it to be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *accord Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010). The amended Rule 23 sets out the factors to guide the Court's analysis, with Rule 23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement and Rule 23(e)(2)(C) and (D) focusing on substantive fairness. *See* FED. R. CIV. P. 23 advisory committee's notes to 2018 amendment (stating Rule 23 focuses on the "core concerns of procedure and substance" when deciding whether to finally approve a settlement).

To approve a class action settlement as procedurally fair, Rule 23 requires the Court to find in part that, "the class representatives and class counsel have adequately represented the class [and]the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B); *see also Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 3 (D. Mass. 2020) (granting final approval where the class representative and class counsel diligently represented the class and the settlement was reached following an adversarial and contentious process that included mediation). "A district court has considerable discretion in approving a class action settlement, given the generality of the standard and the need to balance a settlement's benefits and costs." *Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-CV-00296-JAW, 2023 WL 167560, at *2 (D. Me. Jan. 12, 2023). "The court's role in reviewing a proposed settlement agreement is effectively that of a fiduciary for the class members, a duty which obtains whether or not there are objectors or opponents to the proposed settlement." *Id.* A settlement is substantively fair when, "the relief provided for the class is adequate," accounting for the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]

FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D); *accord Jean-Pierre v. J&L Cable TV Servs, Inc.*, No. 1:18-cv-11499, 2021 WL 1862102, at *3 (D. Mass. May 10, 2021). The amended Rule 23(e)(2) requirements overlap with the *Grinnell* factors that courts in this Circuit consider in approving class action settlements. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*,

535 F. Supp. 2d 249, 259 (D.N.H. 2007) (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*")).[3] Courts have also considered the "ability of the defendants to withstand a greater judgment" when evaluating settlements. *Grinnell*, 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Under both the Rule 23(e)(2) factors and First Circuit precedent, this Settlement is suitable for final approval.

### D.      The Settlement Is Procedurally Fair.

#### 1.      Plaintiffs and Class Counsel have Adequately Represented the Interests of the Settlement Class.

As described in Plaintiffs' Prelim. Approval Mem., Plaintiffs are adequate Settlement Class Representatives. *See* Argument § I.A.1. Their interests completely align with the interests of the Class, as each named Plaintiff, like the members of the Settlement Class, is a current or former student of Suffolk, whose personal information was compromised as a result of the Incident. *Id.*; *see also id.* at Argument § II.A.4. Plaintiffs and the members of the Settlement Class seek the same relief from the same injury. *See In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426, 2016 WL 543137, at *4 (D. Me. Feb. 10, 2016) (finding class representatives adequate where they "suffered the same injury as class members").

"The duty of adequate representation [also] requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009); *accord* FED. R. CIV. P.

---

[3] The *Grinnell* factors include: "(1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Tyco*, 535 F. Supp. 2d at 59. The last three factors are encompassed in the considerations under FED. R. CIV. P. 23(e)(2)(A)-(C).

23(g); *see also In re Tyco*, 535 F. Supp. 2d at 259 (listing "quality of counsel" and "conduct of the negotiations" as *Grinnell* factors). Class Counsel's extensive class action and data breach litigation experience, and their efforts during the action, further confirm their adequacy to serve on behalf of the Settlement Class. *See* ECF Nos. 36-3, 37-3, 37-4, 37-5, & 42-1. Class Counsel were well-versed in the relevant facts and law, conducted an extensive investigation, formulated the theory of this lawsuit, and thus understood the potential strengths and risks of Plaintiffs' claims. Prior to filing suit, Class Counsel gained insights on the strengths and weaknesses of Plaintiffs' claims while reviewing public disclosures and reports concerning the Incident, as well as interviewing potentially impacted individuals. Laukaitis Decl. ¶ 4. Later in the litigation, Class Counsel made informal requests for documents and information to Suffolk that were needed to make sure Class Counsel were knowledgeable of the relevant facts. Laukaitis Decl. ¶¶ 4-5. Class Counsel met and conferred with Suffolk on multiple legal and factual issues, and then used that to further Class Counsel's ongoing investigation, settlement strategy, and understanding of the case. Laukaitis Decl. ¶¶ 5-6. As a result of these efforts Class Counsel was "fully informed of the legal bases for the claims and defenses herein," which allowed them to engage in "extensive negotiations" and effectively represent the class. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-md-02208, 2014 WL 6968424, at *3 (D. Mass. Dec. 9, 2014).

## 2. The Settlement is the Product of Arm's Length Negotiations.

There is a strong presumption that a proposed class action settlement is fair, reasonable, and adequate when the settlement is the result of arm's-length negotiations. *See City P'Ship*, 100 F.3d at 1043 (where "sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"). The Settlement here was the result of hard-fought negotiations during a mediation session before the Honorable Thomas R. Allen (Ret.) of ADR Systems and arm's-lengths negotiations between the Parties, including a series of

offers and counteroffers following a productive, yet unsuccessful mediation. Laukaitis Decl. ¶ 7. Specifically, after a mediation session in which the Parties were unable to reach a resolution, the Parties engaged in multiple arm's length negotiations and exchanged additional information regarding their respective legal positions and settlement proposals. Laukaitis Decl. ¶ 8. Following these additional arm's-length negotiations, the Parties were able to reach reached an agreement in principle that ultimately culminated in the proposed Settlement. Laukaitis Decl. ¶ 9.

The negotiations leading to the settlement were contentious and hard-fought, with Class Counsel and Suffolk's Counsel each advocating for the best interests of the Class and Suffolk, respectively. Laukaitis Decl. ¶¶ 8-10. The resulting settlement reflects an agreement reached at arm's length, in good faith, and free of any collusion. Laukaitis Decl. ¶¶ 10-11. Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate, and is in the best interest of Plaintiffs and the proposed Settlement Class. Laukaitis Decl. ¶¶ 12-13. Although Suffolk denies liability, it likewise agrees that settlement is in the Parties' best interests. For these reasons, the Court should conclude that the Settlement is a procedurally fair result for the Settlement Class that satisfies the requirements of Rule 23 and warrants final approval by the Court.

### E. The Settlement Is Substantively Fair.

While Class Counsel believe that Plaintiffs' claims would have prevailed had the action advanced, there was nevertheless considerable risk of a less favorable result (including no recovery at all) if the litigation continued through trial, post- trial motions and appeal. Given the risks, the Settlement achieves a substantial recovery for the Settlement Class and satisfies the factors for final approval under Rule 23(e)(2)(C)-(D) and the *Grinnell* factors.

### 1. The Potential Costs and Risks of Continued Litigation Weigh in Favor of Final Approval.

In determining the fairness of a settlement, courts must weigh the settlement against the costs, risks, and delay of trial and appeal. *See also* FED. R. CIV. P. 23(e)(2)(C)(i); *accord In re Tyco*, 535 F. Supp. 2d at 259 (listing "comparison of the proposed settlement with the likely result of litigation" as a *Grinnell* factor). Data breach cases are generally regarded as complicated class action cases because they involve many novel and highly technical subject areas. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("[D]ata breach cases… are particularly risky, expensive, and complex."). Because the legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md- 2522 (PAM) (JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rev'd and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017), *amended,* 855 F.3d 913 (8th Cir. 2017), *and aff'd*, 892 F.3d 968 (8th Cir. 2018).

Another issue attendant in continued litigation is the expense of conducting further discovery. In complex cases, such as data breach and privacy cases, these costs can be especially extensive. *See, e.g.*, *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (noting that discovery is one of the significant expenses for continuing a data breach litigation); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (finding that, in the absence of the settlement, the case would likely require "significant and expensive additional discovery; [and] hiring more experts and opposing the defendants' experts"). Given the highly technical nature of data breach litigation, it is very likely that discovery costs in this action would be substantial. Such costs would have been amplified by the involvement of experts to further analyze and explain the

data and their relevance to the case. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 344 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (noting that potential expenses stemming from further discovery can "decreas[e] the net benefit of any damages awarded obtained at trial").

In addition, there is no assurance the Court would certify a litigation class or that the litigation class would be maintained throughout the action. This is an additional significant risk to the ultimate recovery for the proposed Class. *See Bezdek*, 79 F. Supp. 3d at 344 (observing that barriers to surviving summary judgment supported granting final approval of settlement); *In re Tyco,* 535 F. Supp. 2d at 260 (granting final approval because even "[i]f the case survived summary judgment and went to trial, plaintiffs would face additional risk, uncertainty, and delay"). Some courts have asserted that data breach cases may be subject to challenges at the class certification stage. *See Gordon*, 2019 WL 6972701, at *1; *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."); *Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 55 (D.D.C. 2023) (denying class certification in data breach case). These are just a few of the hurdles Plaintiffs would likely face in order to prevail on the merits of their claims.

By reaching a favorable settlement at this stage of the litigation, however, the Parties will avoid significant expenses and risks of continued litigation, and will instead provide immediate and tangible relief to the Settlement Class. As such, the first, fourth, fifth, and sixth Grinnell factors and Rule 23(e)(2)(C)(i) support approval of the settlement.

2. **The Settlement Equitably Distributes Relief Among Class Members and Provides for a Reasonable Attorneys' Fee Award, Satisfying the Remaining Rule 23(e)(2) Factors for Approval.**

Approval of the settlement also requires the Court to assess whether the allocation of funds among class members is "fair, reasonable and adequate." *Hochstadt v. Boston Sci Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010). In this case, the settlement provides a simple, straightforward method for Settlement Class Members to file a claim and receive a payment, thus incentivizing participation. See Rubenstein at § 13:53 (5th ed. 2020) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"). As stated above, Settlement Class Members were required to submit a Claim Form and minimal information to receive compensation. *See* SA, Ex. A. For the alternative cash payment of $40, no information was required; a claimant must simply submit a form. *Id.* This information is typical of what courts have permitted in other cases. Additionally, eligible Claimants could elect to receive approved Compensation Claims via a simple electronic payment method selected by the Settlement Class Member. The payments will be distributed to Claimants based on the type of claims made. Each Claimant who submitted a valid claim was eligible to receive up to $5,000 for an Extraordinary Loss, up to $500 for an Ordinary Loss, up to $75 for time spent, or $40 as a cash alternative, which may be decreased pro rata depending on the total volume of Claims. SA § 4. Furthermore, each Claimant was provided with the ability receive an additional two years of credit monitoring. Any potential inequity in the settlement is avoided through the use of the Class Notice program described above that advised Settlement Class Members of their rights on multiple occasions, through multiple mediums, including the impact of

the releases. Should a Settlement Class Member wish not to be bound by the release, that Settlement Class Member had the opportunity to object or opt out of the Settlement.

Further, Class Counsel seek attorneys' fees of $221,687.72 and reimbursement of $5,312.28 for litigation costs and expenses. As further described in Class Counsel's Fee and Expense Application, filed on March 25, 2024 (ECF Nos. 41-42), the requested award is consistent with awards granted in similarly complex and risky class actions, and is warranted in this action. Similarly, Plaintiffs' request for an incentive award is comparable to awards issued in other class actions. Absent the efforts of Plaintiffs and Class Counsel, the Class would likely not have obtained this recovery. These proposed awards will be paid separately by Suffolk and will not diminish the funds made available to Settlement Class Members, further supporting the fairness, reasonableness, and adequacy of the Settlement.

Because the distribution of the compensation and the Settlement's release wholly avoid any improper preferences, these factors weigh in favor of final approval of the Settlement.

### 3. The Settlement Amount Falls Within a Range of Reasonableness that Supports Granting Final Approval.

When assessing the reasonableness of a settlement, courts compare "the proposed settlement with the likely result of continued litigation." *In re Tyco*, 535 F. Supp. 2d at 259; *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (evaluating a settlement by assessing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing"). When determining whether a settlement falls within the "range of reasonableness," the issue is not whether the settlement represents the best possible recovery, but how the settlement relates to the

strengths and weaknesses of the case. Thus, the court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum[.]" *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005) ("[A] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes…"). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Rivero Souss v. Banco Santander S.A.*, No. 09-2305 (FAB), 2011 WL 13350165, at *7 (D.P.R. June 9, 2011).

The Settlement reached here compares favorably if not better with settlements reached in similar data breach actions. *See Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *1 (C.D. Cal. Nov. 21, 2022) (granting final approval to data breach settlement that provided class members with the ability to file claims for (1) reimbursement of ordinary expenses and lost time up to $300; (2) reimbursement of extraordinary expense of up to %5,000; (3) a $50 benefit for California subclass members; and (4) made credit monitoring services available to all class members);*Charlie et al. v. Rehoboth McKinley Christian Health Care Services*, Case No. 1:21-cv-00652 (D.N.M.) (granting final approval to data breach settlement that provided class members with the ability to file claims for (1) reimbursement of four hours of lost time at $15 per hour and out-of-pocket losses up to $500; (2) reimbursement of extraordinary losses up to $3,500; and (3) two years of credit monitoring services); *Bowdle v. King's Seafood Company, LLC*, Case

No. 8:21-cv-01784 (C.D. Cal.) (granting final approval to data breach settlement that enabled class members to file claims for (1) reimbursement of ordinary expenses and lost time up to $450; (2) reimbursement of extraordinary expenses up to $3,000; and (3) credit monitoring services).

For these reasons, this factor weighs in favor of final approval of the Settlement.

### 4. The Positive Reaction of the Settlement Class Weighs in Favor of Final Approval.

To further support approval of a settlement, courts look to the class's reaction to the settlement. *In re Tyco*, 535 F. Supp. 2d at 259 (citing the "reaction of the class to the settlement" as an additional *Grinnell* factor). It is important to note that the existence of an objection to a settlement does not by itself prevent the court from approving the agreement. Rather, this factor weighs in favor of granting final approval so long as the reaction of the class is "positive." *In re Tyco¸* 535 F. Supp. 2d at 261 (noting that "only a small number" of class members had raised objections and that their objections were "without merit"); *accord Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[The low] number of requests for exclusion from the settlement, as well as the number and substance of objections filed ... constitutes strong evidence of fairness of proposed settlement and supports judicial approval."). In cases where a smaller portion of class members respond to the notice of settlement, this factor can still weigh in favor of approval where the responding class members react positively and offer little objection. *See Roberts*, 2016 WL 8677312, at *6.

Here, the positive reaction of the Settlement Class weighs in favor of final approval. To date 1,352 class members have filed claims, reflecting a claims rate of approximately 2.5%. Laukitis Decl. ¶ 15. While at first glance this claims rate may seem low, it favorably compares to the claims rates in other data breach class actions that have been given final approval. *See, e.g., Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9

(C.D. Cal. Oct. 30, 2023) (finding claims rate of 1.6% "in line with claims rates in other data breach class action settlements that courts have approved"); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (granting final approval to a data breach settlement with a claims rate of 0.66%); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate ... is on par with other consumer cases, and does not otherwise weigh against approval).

Further, the Class Notice advised Settlement Class Members of their right to object to the Settlement and to otherwise opt out of the Settlement. Montague Decl. ¶ 9. Settlement Class Members had until April 8, 2024 to object or opt out of the Settlement, and to date, out of over 52,000 Settlement Class Members, zero Settlement Class Members have filed an objection, and only seven (7) have opted out of the Settlement. Montague Decl. ¶ 9. The low number of opt outs and zero objections support a finding of the Settlement's reasonableness. *See Roberts v. TJX Cos., Inc.*, Civil Action No. 13-cv-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (approving final settlement where, out of 4018 class members, none objected to the settlement and three class members asked to be excluded from the settlement); *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *6 (C.D. Cal. Nov. 21, 2022) ("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval."); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving class action settlement after no objections and three opt-outs).

Given the reaction of the Settlement Class, this factor weighs in favor of final approval of the Settlement.

**5. Plaintiffs' Comprehensive Investigation and Informed Mediation Process Support Approving the Settlement at this Stage of the Litigation.**

The next *Grinnell* factor asks whether Plaintiffs have completed sufficient discovery "to provide the parties with adequate information about their respective litigation positions." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010). This does not require the parties to complete formal discovery; it is sufficient that they "conduct[ ] discovery in tandem with their settlement efforts" and are able to make an informed decision as to settlement. *Walsh v. Popular, Inc*., 839 F. Supp. 2d 476, 481 (D.P.R. 2012). Plaintiffs' Co-Lead Interim Class Counsel's investigation with the information developed during the mediation process gave Plaintiffs a firm basis to evaluate the conduct at issue and the possible settlement value. Laukaitis Decl. ¶ 19.

**6. The Ability of the Defendant to Withstand a greater Judgment Did Not Negatively Impact Settlement Negotiations.**

When evaluating settlements, courts in this Circuit weigh the proposed settlement against the "ability of the defendants to withstand a greater judgment." *Roberts*, 2016 WL 8677312, at *6, 8 (quoting *Grinnell*, 495 F.2d at 463). This factor is only relevant in cases where "the settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). Universities, including Suffolk, have been significantly financially impacted as a result of Covid-19. Yet even if this did not rise to the level necessary to meet this factor, courts give this factor little weight. *Id.*; accord *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005) (the seventh *Grinnell* factor is a "defendant oriented factor" that is "neutral" when dealing with defendants with "classic deep pockets"). Accordingly, this factor weighs in favor or against final approval of the Settlement.

## VI. The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class Members with Adequate Notice of the Settlement.

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). In addition, "[f]or any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The Class Notice plan satisfied these requirements. *See generally* ECF No. 42-2, ¶¶ 5-21.

Here, following the Court's approval of the Class Notice plan, the Settlement Administrator directed notice to the Settlement Class via direct mail and email notice. ECF No. 42-2 ¶¶ 9-11. A Long Form Notice was also posted on the Settlement Website. ECF No. 42-2, ¶ 11. To ensure that Class Notice reached as many Settlement Class Members as possible, the Settlement Administrator performed reasonable email and physical address checks for the Short Form Notice. ECF No. 42-2, ¶¶ 9-14. RG/2 also caused a version of the Short Form Notice be published in the Boston Globe on two separate occasions, and engaged in a media campaign listing information about the settlement on four separate online platforms. ECF No. 42-2, ¶¶ 15-16. Finally, 52 days before the deadline for Settlement Class Members to file claims, the Settlement Administrator sent a Reminder Email to all Settlement Class Members who had not yet filed claims or otherwise opted out of the Settlement. Montague Decl. ¶¶ 7-8. Courts have recognized that email notices and online publication notice satisfy due process. *See Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (finding email notice and a link of the notice on each entities' respective websites to be "the most reasonable manner to ensure that class members receive word of the settlement"); *In re TelexFree Sec. Litig.*, 475 F. Supp. 3d 15, 17 (D. Mass. 2020) (same).

Further, the Class Notice included important information about the Settlement, including how to opt-out or object, where to find more information about the Settlement, and how to contact Class Counsel. Montague Decl. ¶¶ 9-10. Additionally, the Class Notice was designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. ECF No. 42-2, ¶ 8. The design of the Class Notice followed principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov, and contain plain-language summaries of key information about Settlement Class Members' rights and options. As required by Rule 23(e), the Class Notice generally described the Settlement in sufficient detail to alert Settlement Class Members to come forward to be heard, and contained all of the critical information required to apprise Settlement Class Members of their rights. Id. Thus, the notice plan is adequate and provided sufficient detail to allow Settlement Class Members with adverse viewpoints to come forward and be heard. *see also Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).[4] The Class Notice to the Settlement Class here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements. *Id*.

---

[4] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

**VII. The Proposed Settlement Class Should be Certified for Final Approval of the Proposed Settlement.**

On January 8, 2024, the Court preliminarily certified the Settlement Class for purposes of the proposed Settlement, finding that the requirements of Rule 23(a) and (b)(3) were satisfied for settlement purposes. *See* Prelim. Approval Order, ECF No. 39 ¶ 3. For the same reasons as argued in the Prelim. Approval Mem. at 19-23, the Court should grant final certification of the Settlement Class for purposes of Settlement.

Bolstering Plaintiffs' earlier arguments in support of certification of settlement class is the fact that the Settlement Administrator sent Class Notice to over 52,775 unique email addresses and physical addresses. Montague Decl. ¶ 8. The size of the notice program further confirms that the numerosity requirement under Rule 23(a) is satisfied. *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) (finding that a 51-person class was above the "critical mass of 40" members).

In the same vein, the size of the Settlement Class confirms that certifying a settlement class is a superior option for resolving this Action. *Saunders v. Getchell Agency, Inc.*, No. 1:13-cv-00244, 2015 WL 1292594, at *8 (D. Me. Mar. 23, 2015) ("Without a more compelling showing that a class action will pose discrete difficulties, there is no sound basis to conclude that a multitude of individual lawsuits against [the defendant] would be a superior process to a single class action of relatively modest size."). It is worth noting that despite the size of the class, aside from the Plaintiffs named here, no other Settlement Class Member has commenced an individual action. *See Henderson v. Bank of N.Y. Mellon, N.A.*, 332 F. Supp. 3d 419, 430 (D. Mass. 2018) (superiority satisfied where "class treatment can vindicate the claims of groups of people whose individual claims would be too small to warrant litigation"); *accord In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) ("In this case, involving millions of potential

plaintiffs with small individual claims, a class action is the only feasible mechanism for resolving the dispute effectively."). Therefore, Plaintiffs' request that the litigation finally be certified as a class action for settlement purposes, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court entered the proposed Final Approval Order and Final Judgement, filed herewith: (i) granting Final Approval of the Settlement; (ii) finally certifying the Settlement Class for purposes of settlement; and (iii) providing other such relief required to effectuate the Settlement.

Dated: June 4, 2024

Respectfully submitted,

*/s/ Jason M. Leviton*

Jason M. Leviton (BBO# 678331)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Phone: (617) 398-5600
jason@blockleviton.com

Gary F. Lynch (*pro hoc vice forthcoming*)
Nicholas A. Colella (admitted *pro hac vice*)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
F: (412) 231-0246
gary@lcllp.com
nickc@lcllp.com

Kevin Laukaitis (admitted *pro hac vice*)
**LAUKAITIS LAW FIRM LLC**
737 Bainbridge Street #155
Philadelphia, PA 19147
Ph: 215-789-4462
Email: klaukaitis@laukaitislaw.com

James A. Francis (admitted *pro hac vice*)

John Soumilas (admitted *pro hac vice*)
**FRANCIS MAILMAN SOUMILAS, PC**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Erica C. Mirabella (BBO# 676750)
**MIRABELLA LAW, LLC**
132 Boylston Street, 5th Floor,
Boston, MA 02116
T: (617) 580-8270
F: (617) 583-1905
erica@mirabellallc.com


*Counsel for Plaintiffs and the Settlement Class*