UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEGAN JACKSON, *et al.*,<br><br>         *Plaintiffs*,<br><br>  v.<br><br>SUFFOLK UNIVERSITY,<br><br>         *Defendant.* | Case No. 1:23-cv-10019<br><br>Judge Denise J. Casper |

## DEFENDANT'S BRIEF IN OPPOSITION TO MOVANT PRISCILLA A. WILLIAMS'S MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT

Defendant Suffolk University ("Suffolk"), by and through undersigned counsel, hereby opposes movant Priscilla Williams's Motion to Enforce the Settlement Agreement. This is a data-breach lawsuit. The parties agreed to a class-wide settlement, which was filed with the Court on November 14, 2023 (Settlement Agreement, attached as Exhibit A), granted preliminary approval on January 8, 2024 (ECF No. 39), and granted final approval on June 18, 2024 (ECF No. 49).

Williams is a class member who did not opt out of or object to the settlement. Rather, she submitted a claim for the maximum amount of benefits available to class members under the settlement, including $5,000 in supposedly extraordinary losses related to alleged credit-line reductions and denials of insurance quotes, among other unusual types of claims. (Declaration of J. Montague, attached hereto as Exhibit A, ¶ 5.) The claims administrator correctly denied that portion of Williams's claim, because the purported losses were not actual, documented, and unreimbursed monetary losses, as is required for extraordinary loses under the express terms of the Settlement Agreement. (*Id*. at ¶ 12.) Instead, the administrator approved only the portion of Williams's claim concerning ordinary losses—for which she received and accepted a $575 payment, the maximum amount permitted under the settlement. (*Id*. at ¶ 6.)

34366810.2

Williams now argues that her claim for $5,000 in extraordinary losses was incorrectly denied, and she seeks $5,000 for her purported losses, plus punitive damages and other forms of relief. (ECF No. 50.) Williams's Motion is meritless and should be denied for several reasons.

First, Williams's Motion is procedurally improper. Contrary to the characterization in the Motion, Williams is not a "plaintiff"; there is no case captioned "Priscilla Williams v. Suffolk University, et al."; she has not filed any legal claims against Suffolk or the claims administrator, RG/2 Claims Administration LLC ("RG/2"); and RG/2 is not a defendant in any action (nor should it be). Further the Court granted final approval to the class-wide settlement in this case on June 18, 2024, which, upon the "Effective Date" of the Settlement Agreement that occurred 35 days later on July 23, 2024, barred all class members—including Williams—from "filing, commencing, prosecuting, intervening in, or participating . . . in any other lawsuit or administrative, regulatory, arbitration, or other proceeding . . . against Suffolk . . . based on the Released Claims." (ECF No. 49, ¶ 17.) And even if the Motion were a valid attempt to simply enforce the Settlement Agreement, it would not entitle Williams to assert sweeping (and baseless) claims for things like discrimination and attorney misconduct, or to seek a wide variety of relief for things like punitive damages—which have no connection whatsoever to the data breach—against Suffolk and third-party RG/2.

Second, Williams did not follow the appropriate process to appeal the denial of her claim for extraordinary losses. Section 13(D)(iv) of the Settlement Agreement lays out this process:

> Claimants shall have 30 days from receipt of any offer of payment from the Claims Administrator to accept or reject the offer. If a Claimant rejects an offer from the Claims Administrator, the Claims Administrator shall have 15 days to reconsider its offered amount and make a final determination. If the Claimant approves the final determination, then the approved amount shall be the amount to be paid. If the Claimant does not approve the final determination within 30 days of it being made, then the dispute may be submitted to the claims referee within 10 days from the date by which the Claimant was required to approve the final determination.

34366810.2

Williams filed a claim for $5,575. The claims administrator, RG/2, appropriately denied her $5,000 claim for extraordinary losses and mailed her a check for $575: $500 in fees for credit monitoring and $75 for lost time spent dealing with the incident. Williams accepted and deposited the check. (Montague Decl. at ¶ 14.) Therefore, Williams did not reject the offer as required to move forward with the appeal process. Moreover, even if Williams did reject the offer, she failed to submit the dispute to the claims referee, another integral step to appeal the denial of an extraordinary loss claim. Because she did not follow the appropriate appeal process, Williams does not have grounds to compel any additional settlement-related payments.

Third, Williams's claims for extraordinary losses plainly were unrelated to the breach and insufficiently documented. Those claims included a credit score drop due to false delinquencies, a denied insurance quote, increased premiums, credit-line reductions totaling $5,650, and legal fees incurred from consultations with lawyers who apparently did not take her case. Section 4(A)(ii) of the Settlement Agreement describes what constitutes an extraordinary loss:

> Defendant will provide up to $5,000 in compensation to each Claimant for proven monetary losses, professional fees (e.g., attorneys' fees accountants' fees), and fees for credit repair services incurred as a result of the Incident, provided:
>
> (a) The loss is an actual, documented, and unreimbursed monetary loss;
>
> (b) The loss was more likely than not caused by the Incident;
>
> (c) The loss occurred between June 25, 2022, and the close of the Claims Period;
>
> (d) The loss is not already covered by one or more of the normal reimbursement categories; and
>
> (e) The Claimant made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit-monitoring insurance and identity-theft insurance.

The claims administrator reviewed Williams's claims and determined they did not meet these criteria. (Montague Decl. at ¶¶ 10-13.) A drop in credit score is not an actual monetary loss. (*Id*.) Similarly, a denied insurance quote and a credit line reduction are not actual, documented, and unreimbursed monetary losses. (*Id*.) Nor did Williams provide evidence sufficient to show that the legal services she sought were in any way connected to the data breach. (*Id*.) In fact, Williams did not provide evidence showing that these purported losses were in any way related to the incident, let alone more likely than not caused by the incident even after RG/2 gave her the opportunity to provide additional supporting documents. (*Id*. at ¶¶ 7-8.) Accordingly, her extraordinary loss claims were appropriately denied.

WHEREFORE, Suffolk respectfully requests that this Court (A) deny Williams's Motion; and (B) award Suffolk such other and further relief as is appropriate.

Date: November 1, 2024

Respectfully submitted,

*/s/ Lindsey A. Gil*
_____
Lindsey A. Gil
**Peabody & Arnold LLP**
600 Atlantic Avenue
Boston, MA 02210
T: 617.951.2004
F: 617.235.3550
*lgil@peabodyarnold.com*

Christopher G. Dean (admitted *pro hac vice*)
**McDonald Hopkins LLC**
600 Superior Avenue, E., Suite 2100
Cleveland, Ohio 44114
T: 216.348.5400
F: 216.348.5474
*cdean@mcdonaldhopkins.com*

*Counsel for Defendant Suffolk University*

34366810.2

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I caused the above document to be electronically filed with the Clerk of the Court using the ECF System and served to movant via email and regular mail:

Priscilla A. Williams
131 Seaport Blvd, Apt. 1006
Boston, MA 02210
Priscillaw4@gmail.com

/s/ Lindsey A. Gil

Lindsey A. Gil
**Peabody & Arnold LLP**

*Counsel for Defendant*

34366810.2